Tom Tom, the adult, Ms. Payton, no, I'm sorry, I skipped one, Eon Corporation, Ms. Summers. Thank you, Judge Wallach. May it please the Court. The District Court's erroneous claim construction is unorthodox in that it does not seek to define the claims but instead provides commentary as to what should be excluded from the claims. As a result, what began at Markman, with a claim construction that paid attention to the intrinsic record of the claim, morphed into a claim construction that is wholly contradicted by the intrinsic record. Nowhere was this more apparent than in the District Court's construction of the conditional if-terms, into which the District Court interjected three limitations, two of which took on an unjustifiably expanded construction over time. Would you agree that unable to directly communicate doesn't include a situation where the user intentionally disables the self-signal functionality? The original construction of the user intervention limitation held exactly that, that the user could not intentionally cause the impairment or inability to communicate. Because it says, unfortunately in the patent, under certain conditions, which implies that it's an unintentional situation. That's correct, Your Honor, yes. But the problem is that what happened by the time the user intervention limitation got to summary judgment, the District Court's claim construction entirely changed with respect to that limitation. Mind you, when it held at Markman, what that limitation required is that a user could not intentionally cause impairment in Path A. The District Court explained, however, that a user could respond to impairment in Path A. Then if you look at the District Court's construction at summary judgment, it said exactly the opposite. It said that a user could not respond to impairment in Path A, and that is where there's a problem with the claim construction, and that summary judgment version of the claim construction is wrong for three primary reasons. First of all, it is contradicted by the intrinsic record. Second, it's contrary to this court's precedent. And third, it ignores critical differences between the system and the method claims with respect to the intrinsic record. The 491 patent claims are silent as to agency for who can respond or can be the force to communicatively couple the modem for transferring a path. The 491 patent as a whole contemplates user interaction. For example, it explains that users will purchase a subscriber unit, users will be using them poolside or in a basement where communication had previously been impaired, and who else but a user could communicatively couple the modem to the subscriber unit. And importantly, the 101 parent patent expressly discloses a user's involvement in transferring to a stronger signal. But you'd agree that the handsets in the accused network switch from cellular to Wi-Fi regardless of whether cellular service is available or not. So this brings us to a slightly separate issue in the case, which is the conditional or the present tense limitation. And at Markman, the district court held that the transfer to B must be conditioned on a present tense impairment in path A. But at Markman, the claims instruction was silent as to what happens after that. In other words, there's no need to transfer back to path A as soon as path A becomes available again. But at summary judgment, the defendants argued that the present tense condition limitation was much broader and they argued that as soon as path A became available again, the patent required an immediate transfer back over to path A. But this is also wrong and completely unsupported from the intrinsic record. Because if you look at the embodiment disclosed in figure three, as well as the claims that map to that embodiment, there is no requirement to transfer back or revert back to path A, nor is path A designated as a default path. I'm trying to look at this big picture. As I understand the invention, path A is the same as path B, unless there's not adequate cellular service. And if there's not adequate cellular service, then the invention gives you a way to transfer to a Wi-Fi network, which is exactly the opposite of the way that today's smartphones work. So am I missing something factually there? I mean, because the smartphone I have, I suspect most of the people in the room have, if you're on a network, then that's where you are. And your cellular only works if you turn off the Wi-Fi or you don't have a Wi-Fi connection. So why are they not just different things? Two points with respect to that question, Your Honor. First of all, with respect to the reference to path A as a default path, that is only with respect to figure two. The specification makes very clear that the embodiment of figure two has path A as a default path, but not the embodiment in figure three. That's my first point. My second point is there is evidence. In fact, Sprint's own documents show that, in fact, the phones actually don't operate that way out of the box. So what happens is, out of the box, when the user receives the phone, the default path, in fact, is path A. And Sprint's own documents show that in a substantial amount of the time, when the user experiences difficulty communicating through their cellular phone, then they will initialize the Wi-Fi connection. The user has to do something, though. They have to set up. The user is responding to the impairment in the cellular, and the user is then initializing, which, under this court's precedent, is perfectly consistent. May I address the Z4 case? That patent had claims, both method and system claims, that related to securing software by requiring periodic passcode updates. And the passcode updates could be provided either manually or automatically. With respect to the automatic passcode updates, the specification said that they would occur without user interaction. Now, the parties in that case agreed that a user could choose manual or automatic, but the issue was whether, once a user chose automatic, could the user have any involvement in initializing that automatic mode. This court looked at the patent as a whole and said, despite the specification's recitation that a user involvement is not permitted, the patent as a whole contemplates some user interaction, and also noted that the claims in Z4 were silenced to agency, and therefore this court permitted a user to initialize. All right. If I can just make sure I'm understanding you. So you're saying a smartphone today, in today's technology, out of the box, unless you configure the settings so that it uses Wi-Fi, is going to be a cellular phone. Out of the box. Out of the box. Yes, sir. And you're saying that's what this invention is, too, because it's a cellular phone unless you buy one of the units that allows you to switch over. But once you enable a smartphone, once you put in the initial settings, then it defaults to the Wi-Fi. I mean, that's the way the modern technology works. You're saying that's an insignificant difference? Your Honor, so basically the difference that I guess, let me try to convey this in a slightly different way, but I hear what your questioning is, is the way the phones are designed. Right. But the issue is the way the phones are being used. And there's evidence in the record that the phones are being used in exactly the manner that is contemplated and specified. By users. The only way that it will happen that way, so that it works the way this invention works, is if the user sets it up so that there's no Wi-Fi, if I understand correctly. So there's two aspects. Yes. The user will initialize the connection to the Wi-Fi, which is perfectly contemplated within the scope of the patent. The patent is silent. But the user isn't initiating the Wi-Fi because the cellular doesn't work. The user is initiating the Wi-Fi because that's a feature of the phone. Your invention is use radio wave frequencies unless you can't get them, and then switch to some kind of connected line or Wi-Fi under your scenario. But that's not the way the cellular phone works. They always default to the Wi-Fi. It may be because it's a locked signal that you have to enter a password. I walk around the block every morning with my dog, and when I'm looking at my phone, it pops all these Wi-Fi networks up. And it wants to sign on to them as a default. It won't let me because my neighbors lock their Wi-Fi smartly. But that's the default. It's not the default of your invention that it uses cellular first and then goes to Wi-Fi. It's the exact opposite. So why isn't that putting aside this whole user intervention and the fact that you may have to, if you want to sign on to a locked Wi-Fi, put in your password, why doesn't that still not function the same way your invention is? Which, at least in any reading I have, establishes the cellular as the default mode. So two things. First of all, I would go back and reiterate the point that the cellular is not necessarily the default mode, particularly with respect to the embodiment in Figure 3. And second of all, there is evidence, and I can cite you to the citations in the record. I'm happy to give you the record citations. But there's evidence that out-of-the-box, the accused devices do prefer Path A. And importantly, the devices have the capability of being two-way communication devices. The devices will default to Path A out-of-the-box until users initialize the connection, which is permitted within the claim. Sprint's own documents show that a substantial portion of users of Wi-Fi-preferred phones will only initialize Path B if Path A is impaired. Otherwise, they will revert back to Path A for fear of battery drain. That's exactly what's contemplated by the patent. And the citations I can offer you in the record is A1216, which states that most users use Wi-Fi as a backup only. And A1312, showing how to connect to Wi-Fi. Same with A1671 to 78. And then A16... Can I bring you back? You keep talking about Figure 3 as showing a not a preference for the cellular or the radio wave frequencies. But isn't the point of that because Figure 3, at least in the explanation and the specification, is there is no local base station repeater proximate. So it's not possible as a premise that there could ever be a radio wave frequency there. So that really doesn't answer the question of whether, if there is a radio wave frequency, that it's not the preference or not. I just don't find Figure 3 very compelling to the argument that the radio waves aren't the preferred method. Well, so I guess the point with respect to that, it goes back to whether or not you have to revert back to Path A as soon as it is available. So the point of the invention is to improve communication. And it's basically to improve communications where communications had previously been impaired. To your point with Figure 3, but there's no requirement to constantly redetermine signal strength and revert back to Path A as soon as it becomes available. In fact, that requirement would make communication nearly impossible. If the system and methods had to revert to Path A every second, switching back between Path A and B, it would make communication nearly impossible. And that defeats the purpose of the invention, which is to promote communication where it had previously been impaired. You're well past your rebuttal time. Thank you, Your Honor. We'll give you a couple of minutes. Thank you. Mr. Jameson. Good morning, Your Honors. May it please the Court, Woody Jameson on behalf of Cisco and the other appellees. We do agree that the key issue in this case is the conditional if limitations that run through all of the independent method and system claims. And we think that that is the easiest way to affirm the District Court's summary judgment order. And a lot of the questions, I want to start with the facts. It's absolutely beyond dispute in this record that whether we're talking about Wi-Fi or we're talking about a Thymto cell, that if that is activated, that all of these smartphones are going to use that as the preferred path, not the alternative path. You can have perfect cellular service, and these phones are going to use Wi-Fi. They're going to use Thymto cells. It's the exact opposite of what this invention is about. You read the specification. It's crystal clear. We want to use cellular as much as we possibly can. It's the default path. It's right there. It's called out in Column 3 of the spec as the default path, and it's if and only if. We can't use that default path. We've got to figure out how to get back into that cellular network, and we're going to use the modem path. We're going to use the modem path for only as long as we need to use it, and as soon as that cell becomes available again, we're going right back to the cellular path. That was the last point Council was talking about. So you're in your basement. There's no cellular coverage, and you have your unit in there that gives you the Wi-Fi coverage. So with the patented invention, what happens? Does it just switch back to cellular as soon as you leave the basement, or how does it work, and how is that different from what smartphones do? Well, what the patent says is that as soon as the—and let me go back in time. At the time of this patent, we were actually talking about the equivalent of today's set-top box. That was the confines of that invention. So you take that set-top box, you move it out of your invention, and you take it upstairs into your living room, and as soon as you do that, the next time that the system wants to communicate, if that cellular path is available, then it says that we are going to resume conventional two-way communication over the path. So when you turn the phone on, it will go to cellular. The invention will. The invention will. Smartphones, if Wi-Fi is on, it's staying on Wi-Fi. If stem cell is on, it's staying on stem cell. So it's what it chooses when it's initially introduced into an environment. Correct. That's what's different. Correct. And if you look at the—there's been a lot of talk about user intervention and the court's summary judgment order, and I believe it's at 820. The court does not preclude a user from turning on Wi-Fi or from buying a stem cell and turning on a stem cell. These claims are not about enabling the system or enabling the method. These claims are about what happens when you have two paths that are available. You have a cellular path and you have an alternative path B, and that's the conditional if limitation. And whether we're talking about the system claims or we're talking about the method claims, every single one of those claims says we are going to first determine—they don't use the words determine, but the claims are saying let's look to see if we can use that cellular path, and if we can, we're going to communicate over it. And if and only if we're unable, if we cannot receive a signal over cellular path, are we then going to resort to the alternative path B? And again, on this record, the accused devices work the exact opposite of those conditional if limitations, and we believe that that's the easiest way to affirm this court's summary judgment ruling. And, Your Honor, absent any other questions about other issues, I don't have anything else to add. Thank you. Thank you, counsel.  I'd like to give a real-life example of an infringing scenario, which is a user has their phone. They're out and about using their cellular service. They walk into a Starbucks. Their cellular service ends, and they initialize a connection to the path B modem connection using the Starbucks. That is an infringing scenario under the claim construction that existed at Markman, but that claim construction morphed over time at summary judgment. And there's two points I want to make as to why the FLE's argument failed. First of all, they say that the patent contains an anomaly. I have a little problem with that scenario, though, under your invention, if you're in the Starbucks, if there's cellular coverage, there's no need under your invention ever to switch to the Wi-Fi. There must be a present tense impairment in path A that is the condition for the switch. But in my scenario, there is no reception in the Starbucks that you walk into, and that is why you are connecting to the Wi-Fi in the Starbucks. It's very similar to a femtocell. It's very similar. So if you have no reception at all in your home, then you have impairment in path A or inability to communicate through path A. You will go and get a femtocell. It will be installed, and then you can communicate through path B as a result of the impairment in path A. But the problem is these phones don't operate the way you say they operate because they don't default to cellular. They default to Wi-Fi if available, and it's available in the Starbucks whether there's impairment or not. And somebody can choose to sign on to the Wi-Fi if they don't want to use their cell data plan, and it makes it easier, but it's not choosing that because it's impaired for the most part. Sometimes it may be. Sometimes it might. It's still not the default you're talking about, which I think you agree your invention defaults to. Maybe you don't, but it seems like it defaults to the cellular. I mean, yours doesn't even talk about cellular. It talks about radio waves, which I know is similar. This issue is an issue of damages that would need to be resolved when it goes back because the issue is that there is evidence, as I was citing to, that the way these phones are actually used is out of the box, it's preferred path A, and then when there's impairment in path A, the users will initialize path B. That's exactly the scenario that we're both talking about. My problem is I don't see how that's a reasonable interpretation of what these phones are out of the box. Their default out of the box is Wi-Fi, and if the Wi-Fi isn't, if you don't need a password or something and you can connect automatically to it, then it will connect automatically. If you need a password, you do it. But it looks for the Wi-Fi first. It doesn't look for the cellular first. I mean, if that's the true way these operate, then how could that possibly infringe your path? Because the only way that the Wi-Fi will have to be enabled, so a user will have to enable the Wi-Fi, and this is exactly why. That's not true. The phone can come enabled to look for Wi-Fi first. I think they do, frankly. I mean, a lot of times you have to, like I said, log onto a network because people have put security on them. But if you don't, if it automatically locks into an unsecured Wi-Fi, it can be set up that way, can't it? Well, this raises two points. One, again, I go back to the point that this is a damages issue because there is evidence in the record that the phones operate in the way that the patent claims. And secondly, this at least presents an issue of material fact that should be decided for the jury. Wrap up. So with all due respect, we submit that the district court's summary judgment version of the claim construction of the user intervention limitation, the conditional present tense limitation, and the district court's construction of the network hub switching center was incorrect. The opinion should be vacated, and this case should be remanded. Thank you, Your Honor. Thank you.